# EXHIBIT A



Coastside Legal
155 First Avenue
Half Moon Bay, CA 94019

650 218-9192
coastsidelegal.com

July 19, 2013

The Honorable Leonard Davis
U.S. District Court for the Eastern District of Texas
200 W. Ferguson, Third Floor
Tyler, TX 75702

Re:   Uniloc USA, et al., v. Inmagine Corp., LLC, et al.,
      Case No. 6:12-CV-093 LED (Consolidated)

Dear Judge Davis:

Pursuant to the Court's February 13, 2013 Amended Docket Control Order and the Local Rules of this Court, Defendants Inmagine Corp., LLC ("Inmagine") and 123RF Ltd. ("123RF") (collectively referred to as the "Inmagine Defendants") respectfully request permission to file a motion for summary judgment of indefiniteness of claims 7 and 8 of U.S. Patent No. 7,099,849 (the "'849 Patent"), the two asserted claims in this action.

The asserted claims set forth two separate "modules" for performing various functions. These module elements are properly construed as means-plus-function elements under 35 U.S.C. § 112 ¶ 6, since the claims merely set forth generic non-structural means (i.e., a "module") for performing various functions, without reciting sufficient (or for that matter any) structure for performing those functions. *See* Section Manual of Patent Examining Procedure ("MPEP") § 2181 (including "module" on its "list of non-structural terms that may invoke 35 U.S.C. § 112 ¶ 6"); *Transperfect Global, Inc. v. Motionpoint Corp.*, Case No. C 10-2590 CW (N.D. Cal. May 24, 2013) (construing "module" limitations as means-plus-function elements under 35 U.S.C. § 112 ¶ 6). However, the patent specification does not reveal any specific structure or algorithm corresponding to the two modules; plaintiffs' own claim construction chart highlights this deficiency by defining virtually every figure in the patent as the same corresponding structures for both of these modules. Since the '849 Patent contains no clearly linked structures for the module limitations, these limitations are indefinite as a matter of law, and the asserted claims should be held invalid on that basis. *Medical Instrumentation & Diagnostics Corp. v. Electa AB*, 344 F.3d 1205, 1211 (Fed. Cir. 2003); *Mirror Worlds, LLC v. Apple, Inc.*, 742 F. Supp. 2d 875, 883 (E.D. Tex. 2010).

<u>**Summary of the Relevant Claims**</u>

The '849 Patent purports to disclose a rights management and licensing system for storing, tracking, licensing, buying and selling intellectual property rights over the Internet. In the preferred embodiment, this systems consists of a rights owner software application, a central repository database, a rights licensing software application, and "a rights exchange application to integrate the management, tracking, and licensing of intellectual property." [*See* '849 Patent, 1:56-66] As is clear from this language, computer software is a central component of the "system" set forth in the patent.

The Honorable Leonard Davis
July 19, 2013
Page 2

Claim 7 reads as follows:

"A system for managing intellectual property rights, comprising:

*a first module* configured to receive over a network information related to intellectual property rights available for at least a first property from a first intellectual property rights licensor and for at least a second property from a second intellectual property owner;

a repository coupled to the first module, wherein the repository is configured to store the information related to the intellectual rights for the first property and the second property; and

*a second module* configured to:

> visually present to a first potential licensee a first license form including license terms defined by the first intellectual property rights licensor;
>
> receive data entered into the first license form by the first potential licensee, the data including a request to license a first right;
>
> determine if the first right is available, and if the first right is available, to submit the first license request, including at least a portion of the received data, for approval;
>
> transmit a first license approval to the first potential licensee;
>
> visually present to a second potential licensee a second license form including license terms defined by the second intellectual property rights licensor;
>
> receive data entered into the second license form by the second potential licensee, the data including a request to license a second right;
>
> determine if the second right is available, and if the second right is available, to submit the second license request, including at least a portion of the received data, for approval;
>
> transmit a second license approval to the second potential licensee.

Claim 8 adds an element "wherein the license approval is provided by the licensor after the received data is transmitted to the licensor."

As is evident on the face of the claims, the first and third elements of claim 7 disclose no structure for the generic term "module."

The Honorable Leonard Davis
July 19, 2013
Page 3

## Legal Standards for Indefiniteness

As this Court is aware, a claim is invalid as indefinite if it fails to particularly point out and distinctly claim the subject matter that the applicant regards as the invention. 35 U.S.C. § 112 ¶ 2 (2006). To be entitled to a patent, 35 U.S.C. § 112 requires a patentee to "give notice to the public of the extent of the legal protection afforded by the patent, so that interested members of the public, e.g., competitors of the patent owner, can determine whether or not they infringe." *All Dental Prodx, LLC v. Advantage Dental Products, Inc.*, 309 F.3d 774, 779 (Fed. Cir. 2002). "A patent holder should know what he owns, and the public should know what he does not. For this reason, the patent laws require inventors to describe their work in 'full, clear, concise, and exact terms'" *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 731 (2002).

Indefiniteness is a question of law for the Court to decide as part of its duty to construe the claims. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1380 (Fed. Cir. 2005).

## The "Module" Limitations Are Means-Plus-Function Elements

The two "modules" in claim 7 (and by incorporation in claim 8) are means-plus-function elements to be construed in accordance with 35 U.S.C. § 112 ¶ 6. While the claim language uses the word "modules" rather than "means," the absence of the word "means" from the claim is not dispositive. A claim term that does not use the word "means" triggers a rebuttable presumption that § 112 ¶ 6 does not apply. However, this presumption can be rebutted if "the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" *CCS Fitness v. Brunswick Corp.*, 288 F.3d 1359, 1369 (Fed. Cir. 2002) (quoting *Watts v. XL Systems, Inc.*, 232 F.3d 877, 880 (Fed. Cir. 2000)).

The Patent Office has expressly acknowledged that the term "module" may constitute means-plus-function language. Specifically, Section 2181 of the MPEP states that "[w]hen the claim limitation does not use the phrase 'means for,' examiners should determine whether the presumption that 35 U.S.C. § 112, paragraph 6 does not apply is overcome if the claim limitation uses a non-structural term (a term that is simply a substitute for the term 'means for'). The following is a list of non-structural terms that may invoke 35 U.S.C. § 112, paragraph 6: 'mechanism for,' 'module for,'" and eight other terms. Similarly, the Patent Office's 2011 Supplementary Examination Guidelines for Determining Compliance with 35 U.S.C. Section 112 and for Treatment of Related Issues in Patent Applications specifically identifies "module for" as one of the "non-structural terms that may invoke § 112 ¶6." These Patent Office references are entitled to judicial notice "as an official interpretation of statutes or regulations" so long as they are not in conflict therewith. *See Molins PLC v. Textron, Inc.*, 48 F.3d 1172, 1180 n.10 (Fed. Cir. 1995); *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 964 (Fed. Cir. 2002).

Consistent with and since the adoption of these guidelines, at least one court has concluded that claim language that merely recites a "module for" achieving certain functions, without disclosing corresponding structure, must be interpreted under § 112 ¶6. *See, e.g., Transperfect Global, Inc. v. Motionpoint Corp.*, Case No. C 10-2590 CW (N.D. Cal. May 24, 2013) (construing various

The Honorable Leonard Davis
July 19, 2013
Page 4

"modules" recited in a computer implemented claim as mean-plus-function elements, since the claims "do not recite any specific hardware or software for performing the functions listed in each claim," but instead "refer simply to an 'apparatus … comprising: a module for' performing these functions. These generic references do not recite a sufficiently definite structure"). *See also MIT v. Abacus Software*, 464 F.3d 1344 (Fed. Cir. 2006) (finding the term "colorant selection mechanism" to be a means-plus-function limitation because "mechanism" (a term which like "module" is listed in MPEP § 2181 and the 2011 Supplementary Examination Guidelines) is the type of generic term that "typically do[es] not connote sufficiently definite structure," and the claim language itself lacked a further structural disclosure).

Applying these principles, and on the specific facts of this case, the module elements of claims 7 and 8 of the '849 Patent do not disclose any structure beyond the generic term "module." Rather, these claim elements are drafted solely in terms of function; the term "module" could be easily substituted for such generic terms as "mechanism," or "means", without any effect. Accordingly, the Inmagine Defendants will be able to establish that the "module" elements must be construed as means-plus-function elements under 35 U.S.C. § 112, ¶ 6.

### There Is No Structure Corresponding to the Modules' Claimed Functions

Not only does the language of claims 7 and 8 of the '849 Patent fail to adequately disclosure any structure corresponding to the claimed "modules," but the patent specification itself is similarly deficient. As a result, claims 7 and 8, properly construed, are invalid as indefinite.

As this Court is aware, a claim expressed in means-plus-function language covers the corresponding structure in the specification that performs the claimed function, and the equivalents of that structure. *Ergo Licensing LLC v. CareFusion 303, Inc.*, 673 F.3d 1361, 1363 (Fed. Cir. 2012). Thus, "[s]imply disclosing software . . . 'without providing some detail about the means to accomplish the function is not enough'" to save a means-plus-function claim from an indefiniteness challenge. *Noah Systems, Inc. v. Intuit, Inc.*, 675 F.3d 1302, 1312 (Fed. Cir. 2012) (quotations and citations omitted); *see also Mirror Worlds, LLC v. Apple, Inc.*, 742 F. Supp. 2d 875, 882 (E.D. Tex. 2010).

A structure "corresponds" to the function only if the applicant clearly linked or associated the two. *Ergo Licensing LLC*, 673 F.3d at 1364. In the absence of such a disclosure, it is irrelevant for purposes of determining indefiniteness whether one of ordinary skill *could* devise some method to perform the disclosed function(s). As the Federal Circuit noted in *Blackboard, Inc. v. Desire2Learn, Inc.*, 574 F.3d 1371, 1385 (Fed. Cir. 2009), "[a] patentee cannot avoid providing specificity as to structure simply because someone of ordinary skill in the art would be able to devise a means to perform the claimed function. To allow that form of claiming under section 112, paragraph 6, would allow the patentee to claim all possible means of achieving a function," something that the mean-plus-function statute "is intended to prevent."

Moreover, a computer-implemented means-plus-function claim, such as those in this case, must be supported in the specification by a specific corresponding algorithm. *See Ergo Licensing LLC*, 673 F.3d at 1364–65; *see also Network-1 Sec. Solutions, Inc. v. Cisco Sys., Inc.*, 692 F. Supp. 2d

The Honorable Leonard Davis
July 19, 2013
Page 5

632, 646–47 (E.D. Tex. 2010). The required algorithm is a "step-by-step procedure for accomplishing a given result," whether given as a "mathematical formula, in prose, or as a flow chart." *Ergo Licensing LLC*, 673 F.3d at 1364 (citations and internal quotation marks omitted).

The '849 Patent does not disclose the structures or algorithms that perform the functions recited for the "module" limitations in that patent, and there is certainly no clear linkage between any structures and the functions performed by the module elements. This deficiency is highlighted by plaintiffs' disclosure of corresponding structures in its Patent Rule 4-3 Statement. For example, for the first module, plaintiffs have broadly identified the following corresponding structures: 1) "claim language of the '849 Patent;" 2) "Rights intelligence application 102 of Figure 1 and the corresponding description . . .;" 3) "The example algorithms disclosed in the '849 Patent and equivalents, including without limitation Figures 2, 3A, 3B and 6, and the corresponding description;" 4) "The example data structures disclosed in the '849 Patent, and equivalents, including with limitation Figures 8A, 8B, 8C, 9A, 9B, 9C, 10A, 10B, 10C, 11A, 11B, 11C, 12A, 12B, 12C, 13A, 13B, 13C, 14 and 14, Tables 1, 2, 3, 4, 5, 6, 7, 7, and 9, and the corresponding description;" and 5) "The example web pages disclosed in the '849 Patent and equivalents, including without limitation Figures 5, 5A, 5B, 5C, 5D, 5E, 5F, 5G, 5H, 5I, 5J, and 5K, and their corresponding descriptions." Plaintiffs' disclosure for the second module is identical to that for the first module, except that instead of "Rights intelligence application 102 of Figure 1," plaintiffs disclosed "Rights management and licensing system 100 and rights exchange application 108 of Figure 1" and provided some different page citations. Plaintiffs cited the exact same "example algorithms," "example data structures" and "example web pages" for both the first module and the second module, although the two modules on their face perform very different functions. Plaintiffs' citations highlight the failure of the '849 Patent to disclose any specific structures that perform the functions performed by the claimed "module" elements. *See Mirror Worlds, supra*.

## Conclusion

The Inmagine Defendants will be able to show that the "module" elements of asserted claims 7 and 8 of the '849 Patent are properly construed as means-plus-function elements under 35 U.S.C. § 112 ¶ 6, and to prove by clear and convincing evidence that the asserted claims are invalid for indefiniteness because the patent fails to adequately disclose specific structure for performing the functions recited for these elements. Accordingly, the Inmagine Defendants respectfully request leave to file a motion for summary judgment to resolve this case dispositive issue.

                Respectfully submitted,

                COASTSIDE LEGAL

                By:    /s/  Kenneth B. Wilson
                          Kenneth B. Wilson
                          Attorney for Defendants
                          Inmagine Corp., LLC
                          and 123RF Ltd.