IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNILOC USA, INC., ET AL., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. 6:12-CV-93-LED |
| v. | § | |
| | § | JURY TRIAL DEMANDED |
| INMAGINE CORPORATION, LLC, ET AL., | § | |
| | § | |
| | § | |
| Defendants. | | |

## MEMORANDUM OPINION AND ORDER

This Opinion construes U.S. Patent No. 7,099,849 (the "'849 Patent").

## BACKGROUND

Plaintiffs Uniloc USA, Inc. and Uniloc Luxembourg S.A. (collectively "Uniloc") allege infringement of the '849 Patent by Defendants Inmagine Corporation LLC, 123RF LTD., Revostock, Inc., V.R. Media Resources, Inc., DepositPhotos Inc., and Dreamstime.com, LLC (collectively, "Defendants"). The Parties requested that the Court hold a mini-*Markman* hearing to resolve two case-dispositive sub-element phrases appearing in the only independent asserted claim.[1] The Court held the mini-*Markman* hearing on April 16, 2013.

The '849 Patent is directed toward an integrated rights management and licensing system for storing, researching, buying, and selling intellectual property rights. '849 Patent, Abstract. Claim 7, the only independent claim asserted, recites:

---

[1] Uniloc sued Defendants for infringement of the '849 Patent in four different cases (6:12-cv-93, 6:12-cv-94, 6:12-cv-423, and 6:12-cv-424). Plaintiffs Uniloc and Defendants Inmagine Corporation LLC, 123RF LTD., Revostock, Inc., and V.R. Media Resources, Inc. filed an Agreed Motion requesting leave to set a mini-*Markman* hearing. 6:12-cv-93, Dkt. No. 38. Defendant Dreamstime.com, LLC originally opposed the motion, but later filed a Notice of Joinder in the Proposal for the mini-*Markman* hearing. 6:12-cv-424, Dkt. No. 26. Defendant DepositPhotos filed an opposition stating that it did not believe that a Mini-*Markman* proceeding would be helpful. 6:12-cv-423, Dkt. No. 19. The Court granted the Motion to set a mini-*Markman* hearing (in the 6:12-cv-93 and 6:12-cv-94 cases). 6:12-cv-93, Dkt. No. 40 Subsequently, the Court consolidated all four cases for pretrial purposes only. 6:12-cv93, Dkt. No. 44.

> A system for managing intellectual property rights, comprising:
>> a first module configured to receive over a network information related to intellectual property available for at least a first property from a first intellectual property rights licensor and for at least a second property from a second intellectual property owner;
>> a repository coupled to the first module, wherein the repository is configured to store the information related to the intellectual rights for the first property and the second property; and
>> a second module configured to:
>> ***visually present to a first potential licensee a first license form including license terms defined by the first intellectual property rights licensor***;
>> receive data entered into the first license form by the first potential licensee, the data including a request to license a first right;
>> ***determine if the first right is available***, and if the first right is available, to submit the first license request, including at least a portion of the received data, for approval;
>> transmit a first license approval to the first potential licensee;
>> ***visually present to a second potential licensee a second license form including license terms defined by the second intellectual property rights licensor***;
>> receive data entered into the second license form by the second potential licensee, the data including a request to license a second right;
>> ***determine if the second right is available*** and if the second right is available, to submit the second license request, including at least a portion of the received data, for approval;
>> transmit a second license approval to the second potential licensee.

*Id.* at 30:43–31:12 (emphasis added to highlight phrases in dispute).

## APPLICABLE LAW

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)). In claim construction, courts examine the patent's intrinsic evidence to define the patented invention's scope. *See id.*; *C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001). This intrinsic evidence includes the claims themselves, the specification, and the prosecution history. *See Phillips*, 415 F.3d at 1314; *C.R. Bard, Inc.*, 388 F.3d at 861. Courts give claim terms their ordinary and accustomed

meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent. *Phillips*, 415 F.3d at 1312–13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. First, a term's context in the asserted claim can be very instructive. *Id*. Other asserted or unasserted claims can also aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent. *Id*. Differences among the claim terms can also assist in understanding a term's meaning. *Id*. For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation. *Id*. at 1314–15.

"[C]laims 'must be read in view of the specification, of which they are a part.'" *Id*. (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id*. (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002). This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow the claim scope. *Phillips*, 415 F.3d at 1316. In these situations, the inventor's lexicography governs. *Id*. Also, the specification may resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc.*, 299 F.3d at 1325. But, "'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification

will not generally be read into the claims.'" *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323. The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent. *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").

Although extrinsic evidence can be useful, it is "'less significant than the intrinsic record in determining the legally operative meaning of claim language.'" *Phillips*, 415 F.3d at 1317 (quoting *C.R. Bard, Inc.*, 388 F.3d at 862). Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent. *Id*. at 1318. Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition is entirely unhelpful to a court. *Id*. Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id*.

## ANALYSIS

**"visually present to a [first/second] potential licensee a [first/second] license form including license terms defined by the [first/second] intellectual property rights licensor"**

Plaintiff proposes "provide a [first/second] license form for display to a [first/second] potential licensee, which [first/second] license form includes license terms selected by the [first/second] intellectual property licensor." Defendants propose "display to a [first/second]

4

potential licensee a license form, created by the [first/second] intellectual property licensor, that includes both license terms and data entry fields." The Parties' disputes center around three component terms: "visually present," "defined," and "license form."

The disputes regarding "visually present" and "defined" were resolved by agreement at the hearing. Plaintiff originally argued that "visually present" should be construed as "provide . . . for display," while Defendants argued that it should simply be construed as "display." At the hearing, however, the Parties agreed that this component term should remain unconstrued. Dkt. No. 62, Mini-*Markman* Hearing Tr., at 30:21–31:19.[2] As to "defined," Plaintiff had proposed "selected," while Defendants argued for "created." The Parties then agreed at the hearing that the term "defined" was preferable. *Id*. at 13:10–15.[3]

As to the third dispute, "license form," Plaintiff argues that the claim language provides for a license form "including license terms" and that no additional construction is necessary. Defendants, however, argue for a construction that requires "data entry fields" in addition to license terms. Plaintiff contends that it would be impermissible to add a "data entry fields" limitation because the term does not appear anywhere in the specification. Dkt. No. 49, at 11. Defendants contend that the claim language specifies that the module must receive data entered into the license form, thus the form necessarily includes data entry fields. Dkt. No. 50, at 15–16.

While it is apparent in the claim language that data must be entered into the form in some fashion—for example, the second module is configured to "receive data entered into the . . . license form"—the claim does not mention any manner for entering data into the form. '849

---

[2] "Mr. Tower: Your Honor, Uniloc will agree with 'visually present,' keeping that term. . . . Mr. Gasparo: Yeah, 'visually present,' plain and ordinary meaning, and not 'provide for display,' yes. The Court: Is that agreeable to plaintiff? Mr. Tower: Uniloc is agreeable, yes, Your Honor." Dkt. No. 62.
[3] "The Court: So you would be happy with 'defined'? Mr. Gasparo: Yes, but not 'selected.' Mr. Tower: Your Honor, we will accept that. We will leave it 'defined.' The Court: By agreement then it is 'defined'; does not require construction." Dkt. No. 62.

Patent, 30:59–60 ("receive data entered into the first license form by the first potential licensee, the data including a request to license a first right; determine if the first right is available, and if the first right is available, to submit the first license request, including at least a portion of the received data, for approval"). Further, the figures in the specification show manners of entering data that do not necessarily employ data entry fields, such as automatically populating the form with default information. '849 Patent, 7:54–69 ("The rights owner application may populate the license agreement template with selected initial information, including, as a default, information from the request template. The license agreement template may then be provided in response to buyer or licensee requests."). Neither the claim nor the specification provides a basis for limiting the claim to "data entry fields" as the sole manner of entering data. Accordingly, it is impermissible to insert an extraneous data-entry-fields limitation.

Two of the disputes were resolved by agreement, and there is no basis in the Patent for inserting a "data entry fields" limitation to "license form." Thus, no construction of this phrase is necessary.

**"determine if the [first/second] right is available"**

Plaintiff argues no construction is necessary and alternatively proposes "determine the availability of the [first/second] right." Defendants propose "determine if the [first/second] requested right is either available for license or unavailable for license, after receipt of the request form from the [first/second] potential licensee." The dispute is whether this term should be construed in a way that limits the determination to available or unavailable.

Plaintiff argues that no construction is necessary because this term is easily understood by a person of ordinary skill in the art and by the jury. Dkt. No. 49, at 15. Further, Plaintiff faults Defendants' proposed construction for improperly narrowing the determination to only two

possibilities. *Id*. According to Plaintiff, there is nothing in the specification, claims, or prosecution history to support that the module in question is configured to determine one of only two possibilities. *Id*. Plaintiff argues that the specification mentions "sold" as a possible status other than available or unavailable. *Id.*, citing '849 Patent, 6:16–20 ("In addition, as changes in the status of intellectual property rights are made, for example, as rights are sold and/or no longer available, the licensing application 106 sends real-time instructions to the central rights repository 104 to change the status of the rights.").

Defendants contend that this term should be construed because the plain and ordinary meaning would provide no guidance to a jury. Dkt. No. 50 at 21. According to Defendants, the determination is necessarily between two options, available and unavailable, since the system proceeds to the next step only if the license is available. *Id.* at 17. Defendants also argue that a construction as a binary decision is consistent with the specification's teaching that the software determines if a requested right is available or unavailable. *Id*. at 20, citing '849 Patent, 19:35–41; 24:47–25:7.

It is unclear how Defendants' proposal of determining if the right is *available or unavailable* clarifies the plain and ordinary meaning of the claim language requiring the module to "determine if the . . . right is *available*." Defendants state that their proposed construction clarifies that an availability determination exists, and that the determination is logically confined to two possible results, available or unavailable for licensing. Dkt. No. 50 at 17, 21. The claim language recites that the system "determines if the [first/second] right is available," and, if so, it proceeds to submit the license request. Thus, it is clear from the claim language that an availability determination exists. However, there is no support in the claim, or in the specification, to confine the determination to two options. As the claim language already

provides substantial guidance as to the meaning of the claim terms, the plain and ordinary meaning of the claim language controls. *Phillips*, 415 F.3d at 1312–13. Therefore, the term "determine if the [first/second] right is available" does not require construction.

## CONCLUSION

For the foregoing reasons, the Court interprets the claim language in this case in the manner set forth above. The Court utilizes the mini-*Markman* proceeding to address terms that, if construed, are case dispositive. As the Parties stated that the mini-*Markman* would allow them to focus on case-dispositive issues, the Court expects that the early construction of the claim language will resolve important issues and result in case-dispositive motions.

**So ORDERED and SIGNED this 24th day of July, 2013.**

_____
**LEONARD DAVIS
UNITED STATES DISTRICT JUDGE**